Filed 12/8/14  Wilson v. Benson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LINNEA WILSON, as Trustee, etc., | H038833 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. PR045408) |
| v. | |
| JOHN BENSON et al., | |
| Defendants and Respondents. | |

Appellant Linnea Wilson's petition to determine ownership of property and cancel a deed was dismissed on statute of limitations grounds by summary judgment.  On appeal, she contends that the five-year limitations period under Code of Civil Procedure sections 318 and 319[1] had never commenced to run because she retained legal title to the property as trustee of a trust.  We agree and reverse the judgment.

## I.  Undisputed Facts

Selda Benson (Selda) was the mother of two children, Linnea Wilson (Wilson) and John Benson (John).  In June 2000, Selda executed a trust declaration creating a revocable living trust, appointed Wilson as the trustee of the trust, and transferred Selda's

---

[1]     Subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

interest in her Aptos home (the property) into the trust.[2] The trust declaration provided that Selda "may add property to the trust or remove property from the trust at any time." The trust declaration also provided that, upon Selda's death, the property in the trust was to be shared equally by Wilson and John.

In June 2004, Selda executed a quitclaim deed transferring her interest in the property to John, his wife Carolyn Benson (Carolyn), and herself as equal joint tenants. This deed was recorded in June 2004. At the same time, Selda executed a will leaving all of her personal property to Wilson. Selda shortly thereafter moved to Florida where John and Carolyn resided. Wilson learned of the quitclaim deed no later than May 2005. In 2005, John obtained a guardianship over Selda's person and property due to her incapacity. Selda continued to pay the property taxes on the property until she died in 2008. In 2011, Selda's personal property was distributed to Wilson under Selda's 2004 will. John and Carolyn have remained in Florida from 2004 to the present.

## II. Procedural Background

In 2011, Wilson filed a petition that asserted three causes of action. The first cause of action was brought in Wilson's capacity as trustee "to determine ownership" of the property. The second and third causes of action were brought in Wilson's capacity as Selda's "successor in interest" to cancel the 2004 deed due to Selda's lack of capacity and John's undue influence on her at the time of its execution.

---

[2] Although the appellate record does not contain a deed transferring the property to Wilson as trustee of the trust, both Wilson and John declared that Selda did so at the same time that she executed the trust declaration. "To create an express trust there must be an explicit declaration of trust followed by an actual conveyance or transfer of property to the trustee." (*Bainbridge v. Stoner* (1940) 16 Cal.2d 423, 428.) "'A trust always requires transfer of legal title to the trustee . . . .'" (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 950.)

John and Carolyn moved for summary judgment based on the statute of limitations.[3] They asserted that the five-year limitations period under sections 318 and 319 applied and had expired before Wilson filed her action. Their motion assumed, for purposes of the motion only, that Selda lacked capacity and was subjected to undue influence when she executed the 2004 deed.

Wilson's opposition to the motion conceded that the five-year limitations period applied, but she argued that the period had not begun to run because she remained "'seised'" of the property as the trustee of the trust. She also argued that the limitations period was tolled under section 351 because Selda, John, and Carolyn were in Florida throughout the period between the execution of the 2004 deed and the filing of Wilson's action.

The trial court found that there were no material disputes of fact, that the five-year limitations period had expired, and that it had not been tolled. It entered judgment against Wilson and denied her motion for a new trial. Wilson timely filed a notice of appeal.

### III. Analysis

Section 318 provides: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, *was seized or possessed of the property in question*, within five years before the commencement of the action." (Italics added.) Section 319 provides: "No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the

---

[3] Their summary judgment motion also contended that the second and third causes of action were barred by laches. The trial court did not credit this contention, and they do not renew it in their brief on appeal. In any case, it would not justify summary judgment as they did not contend that the first cause of action was barred by laches.

3

person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person *was seized or possessed of the premises in question* within five years before the commencement of the act in respect to which such action is prosecuted or defense made." (Italics added.)

The parties dispute whether it is section 318 or instead section 319 that applies here, but this dispute is immaterial. "The overall effect of these sections is manifest: actions relating to *either* the possession of *or* title to real property (or, of course, both) must be commenced within five years from the end of possession or seizin of that property by the claimant or his or her predecessor in interest . . . ." (*Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1328.) " ' "The requirement of seisin or possession is met when it is established that the plaintiff was possessed of legal title . . . ." ' " (*Tobin v. Stevens* (1988) 204 Cal.App.3d 945, 949.) Wilson's action sought to recover title to and possession of the property. Thus, the five-year limitations period applied.

Five years indisputably elapsed between the June 2004 deed and Wilson's commencement of this action in 2011. Wilson contends that the five-year period not only had not expired but had never begun to run because she continued to be "seized . . . of the property in question" as trustee. In her view, Selda lacked the power to convey anything more than equitable title to the property after transferring the property to Wilson as trustee of the trust. Consequently, the 2004 deed did not convey legal title, which Wilson retained as trustee. John and Carolyn, on the other hand, insist that the 2004 deed indisputably conveyed legal title so Wilson lacked legal title as of the execution of the 2004 deed.

"[I]t is a rudimentary principle of trust law that the creation of a trust divides title—placing legal title in the trustee, and *equitable* title in the beneficiaries." (*Allen v. Sutter County Bd. of Equalization* (1983) 139 Cal.App.3d 887, 890.) "The beneficiary of

4

an ordinary trust is empowered to convey only his beneficial interest in the trust property. [Citation.] Since the beneficiary holds only equitable title, the legal title residing in the trustee, the beneficiary has no power to convey absolute ownership of trust property." (*Walgren v. Dolan* (1990) 226 Cal.App.3d 572, 576 (*Walgren*).)

John and Carolyn claim that *Walgren* supports their claim that Selda retained the power to convey absolute ownership of the trust property. Not so. In *Walgren*, the settlor had transferred legal title to the trustees and thereafter entered into a contract to sell the property to the plaintiffs. The settlor died, and the plaintiffs brought an action for specific performance against the trustees. The court held that specific performance was available despite the settlor's lack of legal title at the time of the contract because the settlor had retained the power to "'call for' legal title" and require the trustees to convey title to the plaintiffs. (*Walgren*, *supra*, 226 Cal.App.3d at p. 576.) The source of that power was a provision in the trust declaration that "'[u]pon receipt of written directions from the Beneficiary, the Trustee in their capacity as Trustee shall do and perform any or all of the following acts, to wit [¶] . . . [¶] . . . [c]onvey all or any parts of said real property, subject to all matters then of record against the same, to the person or persons designated in said directions and for such consideration and on such terms and conditions as are therein specified.'" (*Walgren*, at p. 575, fn.1.) It was this provision that rendered specific performance available to the plaintiffs after the settlor's death, as the settlor had the power to require the trustees to convey title and would have been obligated to do so if still alive.

Unlike *Walgren*, the case before us does not involve such a provision nor does it involve an obligation by the settlor (Selda) to convey legal title to John and Carolyn. Selda's trust declaration reserved to her the power to amend or revoke the trust and the power to add or remove property from the trust. While she executed a quitclaim deed purporting to convey a portion of the property to John and Carolyn, John and Carolyn did not attempt to establish that Selda ever exercised her power to amend or revoke the trust

or her power to remove the property from the trust. " 'A quitclaim deed transfers whatever present right or interest the grantor has in the property. [Citation.]' " (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 239.) The quitclaim deed itself contained no language purporting to remove the property from the trust or to amend or revoke the trust. Since, at the time of the quitclaim deed, Selda held only equitable title, but not legal title, to the property, the quitclaim deed conveyed only a portion of Selda's equitable title and left undisturbed the legal title that Wilson held as trustee of the trust.

John and Carolyn put misplaced reliance on *Zanelli v. McGrath* (2008) 166 Cal.App.4th 615 (*Zanelli*), *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331 (*Galdjie*), and *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298 (*Steinhart*). In all three of these cases, the settlor was both the trustee and the beneficiary of the trust and therefore held both legal and equitable title. (*Zanelli*, at pp. 633-635; *Galdjie*, at p. 1350; *Steinhart*, at p. 1320.) Thus, unlike Selda, the settlors in those cases were able to convey absolute title.

The trial court erred in granting summary judgment because the five-year limitations period had never begun to run under sections 318 and 319 as Wilson continues to hold legal title to the property. In reaching this conclusion on the statute of limitations issue, we express no opinion on the merits of Wilson's petition to determine ownership of the property and cancel a deed.

## IV. Disposition

The judgment is reversed. The trial court is directed to vacate its order granting the summary judgment motion and to enter a new order denying that motion. Wilson shall recover her appellate costs.

6

_____

Mihara, J.

WE CONCUR:


_____

Bamattre-Manoukian, Acting P. J.


_____

Grover, J.